Duane A. FREECE, Plaintiff,

v.

Chief of Police William YOUNG, East Rochester Police Dept., Defendants.

Civ. No. 89–0667T.

United States District Court,
W.D. New York.

Jan. 31, 1991.

Duane A. Freece, pro se.

Henry R. Ippolito, Rochester, N.Y., for defendants.

## MEMORANDUM OF DECISION

KENNETH R. FISHER, United States Magistrate Judge.

In this action pursuant to 42 U.S.C. § 1983, plaintiff claims that defendant William Young, the Chief of Police for the Village of East Rochester, New York, violated his constitutional rights (1) by using excessive force during processing at the stationhouse in connection with an arrest otherwise conceded to be upon probable cause and (2) by denying him requested medical treatment immediately after the excessive force was used. The parties have consented to a trial before me, 28 U.S.C. § 636(c), and the matter came on for a jury trial.

The plaintiff testified that he was arrested by members of the East Rochester Police Department on the evening of July 25, 1987, and was transported to the stationhouse. Plaintiff testified that he threatened to sue members of the East Rochester Police Department for false arrest, at the stationhouse during the pedigree questioning which customarily accompanies arrest processing. This occurred before any formal charge was filed and before plaintiff was taken before a magistrate for arraignment Plaintiff testified that Chief Young immediately entered the area in which plaintiff was being processed, and struck him twice with an open hand with such force as to cause a red mark on the left side of his face. Plaintiff testified further that he "might have" asked to see a nurse while at the stationhouse but he conceded on cross examination that he was "bewildered" and that there was a good chance that he did not ask for treatment at all at the stationhouse. He also conceded that, after he was subsequently taken to the Monroe County Jail, he asked to see a

doctor the next morning or as soon as possible and that, indeed, he was examined by a doctor or nurse while at the Monroe County Jail. Plaintiff acknowledged that he did not experience much pain until well after the July 25th incident, when numbness, dizzy spells, and headaches began to occur. Within hours of his initial confinement by the East Rochester Police Force, plaintiff was taken before a Penfield Town Justice for arraignment, and was ordered detained at the Monroe County Jail until January 27th. Although the record was unclear what happened thereafter, plaintiff was ultimately released by Monroe County Jail authorities. He was rearrested in September of 1987 for a robbery which is the cause of plaintiff's current confinement at the Attica Correctional Facility.

At the close of the plaintiff's case, defense counsel moved pursuant to Fed.R. Civ.P. 50(a) for a directed verdict on the ground that plaintiff had not established a prima facie case of (1) a violation of his Fourth Amendment rights to a reasonable seizure and (2) a violation of his right while in police confinement to requested medical treatment. I sent the excessive force claim to the jury, denying defense counsel's motion in part, but granted the motion directing a verdict for the defendant on the denial of medical treatment claim. This memorandum decision explicates the dismissal at the close of plaintiff's case of his medical treatment claim. The excessive force claim was resolved against plaintiff by the jury after less than one half hour of deliberations.

In light of *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), the task in a § 1983 case such as this is "to identify the specific constitutional provision under which ... [plaintiff's] claim arose." *Id.* 109 S.Ct. at 1865. As aptly summarized,

> After *Graham,* 109 S.Ct. at 1871 n. 10; *Whitley v. Albers,* 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986); *Bell v. Wolfish,* 441 U.S. 520, 535–39, 99 S.Ct. 1861, 1871–74, 60 L.Ed.2d 447 (1979); ..., three different parts of the Bill of Rights apply in sequence during arrest and con-

finement. Force during arrest must be reasonable within the meaning of the Fourth Amendment; between arrest and conviction the government may not "punish" the suspect without due process of law; after conviction the government may not inflict cruel and unusual punishment.

*Titran v. Ackman,* 893 F.2d 145, 147 (7th Cir.1990). Because plaintiff had not been convicted of the charges for which he was arrested on July 25, 1987, *see Graham v. Connor,* 109 S.Ct. at 1869 n. 6; *id.* 109 S.Ct. at 1871 n. 10; *Bell v. Wolfish,* 441 U.S. 520, 535 n. 16, 99 S.Ct. 1861, 1872 n. 16, 60 L.Ed.2d 447 (1979), the issue presented by the motion for a directed verdict concerns whether plaintiff's denial of medical treatment claim must be judged by the Fourth Amendment's objective reasonableness standard or by the Fourteenth Amendment's due process standard. The distinction is important because, under the Fourth Amendment standard, the court needs only to decide, upon a view of the evidence most favorable to plaintiff, whether the asserted denial of medical treatment was objectively unreasonable "focusing on the circumstances confronting the police at the time of the arrest without regard to their underlying motives or attitude towards the suspect, ..." *Miller v. Lovett,* 879 F.2d 1066, 1070 (2d Cir.1989); *Calamia v. City of New York,* 879 F.2d 1025, 1034–35 (2d Cir. 1989). Under the Fourth Amendment, therefore, the denial of medical care to an arrestee is judged as but one component of the objective reasonableness standard for any "seizure" and is evaluated by reference to the totality of circumstances and the reasonable person standard.

Under the due process standard, however, the issue is whether plaintiff was deprived of life or liberty without due process of law. There are "three kinds of § 1983 claims that may be brought against ... [officials acting under color of state law] under the Due Process Clause of the Fourteenth Amendment." *Zinermon v. Burch,* —— U.S. ——, 110 S.Ct. 975, 983, 108 L.Ed.2d 100 (1990):

First, the Clause incorporates many of the specific protections defined in the Bill of Rights. A plaintiff may bring suit under § 1983 for state officials' violation of his rights to, e.g., freedom of speech or freedom from unreasonable searches and seizures. Second, the Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions "regardless of the fairness of the procedures used to implement them." *Daniels v. Williams,* 474 U.S. 327, 331, 106 S.Ct. 662, 664, 88 L.Ed.2d 662 (1986).

\* \* \* \* \* \*

The Due Process Clause also encompasses a third type of protection, a guarantee of fair procedure. A § 1983 action may be brought for a violation of procedural due process, ... in procedural due process claims, the deprivation by state action of a constitutionally protected interest in "life, liberty, or property" is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law.*

*Zinermon v. Burch,* 110 S.Ct. at 983. The choice in kind of the pertinent claim is not always an easy task, but for reasons which are discussed in the next paragraph, plaintiff should be considered as having filed a substantive due process claim.

The Supreme Court "has never determined what degree of culpability must be shown before the particular constitutional deprivation asserted in this case—a denial of the due process right to medical care while in detention—is established." *City of Canton, Ohio v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 1204 n. 8, 103 L.Ed.2d 412 (1989). Similarly, the Second Circuit has confirmed that the "standard of culpability" required to establish a violation of the due process rights of a pretrial detainee is an open question, except that "negligence alone ... will not support a claim under the Due Process Clause." *Bryant v. Maffucci,* 923 F.2d 979, 984 (2d Cir.1991) (citing *Daniels v. Williams,* 474 U.S. 327, 333–34, 106 S.Ct. 662, 666–67, 88 L.Ed.2d 662 (1986); *Davidson v. Cannon,* 474 U.S. 344, 347–48, 106 S.Ct. 668, 670–71, 88 L.Ed.2d 677 (1986). The *Bryant* decision was not available to the court at the time it denied

plaintiff's motion for a directed verdict, that motion having been made and decided on January 16, 1991, but it is consistent with the court's view that the Supreme Court has not decided the constitutional standard of liability in substantive due process cases involving medical non-treatment claims since *City of Revere v. Massachusetts General Hospital,* 463 U.S. 239, 244, 103 S.Ct. 2979, 2983, 77 L.Ed.2d 605 (1983) suggested that a pretrial detainee had a substantive due process right to medical care while in pretrial detention. *But cf., id.* 463 U.S. at 246, 103 S.Ct. at 2984 (Rehnquist, J., concurring) (declining to reach the due process issue). *Graham* suggested a retreat from the substantive due process approach, *see also, United States v. Bayles,* 923 F.2d 70 (7th Cir.1991) ("Invocations of substantive due process have fared poorly in recent years."); *Coniston Corporation v. Village of Hoffman Estates,* 844 F.2d 461, 465–66 (7th Cir.1988), but *City of Canton,* by its reference to "the particular constitutional deprivation asserted in th[at] case—a denial of the due process right to medical care while in detention," fully presupposes a substantive due process right to needed medical care of a pretrial detainee (109 S.Ct. at 1204 n. 8). *Zinermon*'s reaffirmance of substantive due process principles (110 S.Ct. at 983) may also be seen as qualifying *Graham*'s approach, at least outside of the Fourth Amendment context. *See also, DeShaney v. Winnebago County Department of Social Services,* 489 U.S. 189, 109 S.Ct. 998, 1005–06, 103 L.Ed.2d 249 (1989). Indeed, *Bryant,* involved a pretrial detainee who asserted a "substantive due process" claim that an abortion was denied to her (923 F.2d at 988) (Newman, J., dissenting on other grounds). The applicable culpability standard, however, remains an open question between the extremes of negligence, which will not support liability, and deliberate indifference, which is the Eighth Amendment standard pretrial detention plaintiffs are, "at least," entitled to. *City of Revere v. Massachusetts General Hospital,* 463 U.S. at 244, 103 S.Ct. at 2983 (due process rights of a pretrial detainee "are at least as great as the Eighth Amendment protections available to a convicted prisoner"). *See also, Bryant v. Maffucci,* 923 F.2d at 983 (same); *Gaudreault v. Municipality of Salem, Massachusetts,* 923 F.2d 203 (1st Cir.1990) (same).[1]

If the culpability standard has not been identified with precision, it is nevertheless clear that a pretrial detainee may not be "punished" without due process of law. As "the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment," *Graham v. Connor,* 109 S.Ct. at 1871 n. 10, it must also protect a pretrial detainee from deprivation of needed medical treatment that amounts to punishment. Any deprivation of liberty that amounts to punishment without due process violates the Amendment. What "amounts to punishment," however, has not been fully articulated. For asserted deprivations which do not implicate something more than a denial of "liberty," the Supreme Court has held:

> In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee.... [f]or under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law.

*Bell v. Wolfish,* 441 U.S. 520, 535–39, 99 S.Ct. 1861, 1871–74, 60 L.Ed.2d 447 (1979). For these cases, the Court has attempted to "provide useful guideposts in determining

---

**1.** The concept of negligence may not be determinative in substantive due process cases. *Cf. Zinermon v. Burch,* 110 S.Ct. at 992 (O'Connor, J., dissenting on other grounds) (*Daniels'* holding that negligence is insufficient applies to a "procedural due process claim"). *But see DeShaney v. Winnebago County Department of Social Services,* 109 S.Ct. at 1012 (Brennan, J., dissenting) (applying *Daniels* to a substantive due process case); *Bryant v. Maffucci,* 923 F.2d at 982–83, 983–84 (same). The reference to deliberate indifference in the text is drawn from seminal Eighth Amendment case, *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

whether particular restrictions and conditions accompanying pretrial detention amount to punishment in the constitutional sense of that word," by instructing that "[a] court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." *Bell v. Wolfish,* 441 U.S. at 538, 99 S.Ct. at 1873.

Although these guideposts may be helpful in determining a threshold of liability for deprivations of liberty, without a deprivation of something more, they do not settle what the guideposts ought to be when that "something more" is taken from a detainee. The fact that an asserted denial of needed medical treatment involves a substantive due process right beyond a simple liberty interest thus suggests that punishment may not be the determinative aspect of the inquiry, and that the standard may turn on vague concepts of arbitrariness or wrongfulness. *Zinermon v. Burch,* 110 S.Ct. at 983 ("The Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions"). A limiting concept is difficult to discern in the cases except by reference to punishment, which may properly be viewed as the substantive component identifying whether governmental action held violative of substantive due process is "arbitrary" or "wrongful."

That being acknowledged, *Bell* does not imply that the due process culpability standard need be further fragmented. Where intent to punish is not evident, "if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary *or purposeless* —a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees." *Bell v. Wolfish,* 441 U.S. at 539, 99 S.Ct. at 1874 (emphasis supplied) (adding, at *id.* n. 21, that there is a *de minimus* level of imposition not cognizable by the Constitution). *Martin v. Gentile,* 849 F.2d 863, 870 (4th Cir.1988). "Multiple standards of official conduct send confusing signals that undermine the force of the law; ..." *Titran v. Ackman,* 893 F.2d at 147. Thus, "pretrial detainees are entitled to reasonable medical care unless the failure to supply that care is reasonably related to a legitimate governmental objective." *Cupit v. Jones,* 835 F.2d 82, 85 (5th Cir. 1987). *See also, Martin v. Gentile,* 849 F.2d at 871 (applying a deliberate indifference standard, but observing that "no legitimate non-punitive goal is served by a denial or unreasonable delay in providing medical treatment where the need for such treatment is apparent").

■ Having identified the two possible standards of care owed to plaintiff, it remains to choose the appropriate one and to apply it to the facts. The choice of the applicable standard depends upon where, in the criminal justice system continuum, plaintiff was when he claims needed medical treatment was denied. For excessive force cases, the Second Circuit stated that "we think the Fourth Amendment standard probably should be applied at least to the period prior to the time when the person arrested is arraigned or formally charged, and remains in the custody (sole or joint) of the arresting officer." *Powell v. Gardner,* 891 F.2d 1039, 1044 (2d Cir.1989). There is no reason, given the Court's current functional approach to these matters, to hold that a plaintiff was an arrestee governed by the Fourth Amendment for certain types of claims such as excessive force and not an arrestee for other claims such as denial of needed medical treatment immediately after the events concerning the excessive force claim occurred. *Powell* thus seems to require application of the Fourth Amendment at least until plaintiff's pretrial custody status is ordered by a judicial officer, as upon arraignment either resulting in an order of pretrial regulatory detention or the setting of bail conditions not yet met. It makes sense to hold the police to an objective standard of reasonableness before a judicial officer commits an arrestee to a pretrial holding facility the administration of which is customarily accorded some degree of deference by federal courts. Until the point when a judicial officer intervenes, there is little reason to add, to the Fourth Amendment objective standard of

reasonableness, the additional element that the particular deprivation claimed amount to or be intended to effect punishment.[2]

■ Applied to this case, the difference in standards varies the focus of inquiry somewhat because, if one accepts plaintiff's version of the events, as the court must when ruling on a motion for a directed verdict, Chief Young's aggravated state of mind would be readily inferred from his claimed physical assault in reaction to plaintiff's threat to sue East Rochester officials. One might easily infer that a policeman who used excessive force against a detainee would be of a mind to punish the detainee in other ways, such as denying needed medical treatment for illegitimate non-penological reasons. Plaintiff's testimony, however, was that he requested to see a nurse during the booking process and that he had not yet been taken before a town judge. If Chief Young subjectively intended to punish plaintiff, this fact is irrelevant to the Fourth Amendment inquiry. *Graham v. Connor*, 109 S.Ct. at 1872; *Finnegan v. Fountain*, 915 F.2d 817, 821, 823, 824 (2d Cir.1990); *Miller v. Lovett*, 879 F.2d at 1069–70. But to the extent substantive due process applies, his intent, without more (see below) is insufficient to make out a substantive due process claim.

■ Applying the objective standard, plaintiff's version of the events established only that he had redness in his face where Chief Young allegedly struck him (I use "allegedly" only because the jury has since exonerated Young of the excessive force claim). Plaintiff did not claim to have exhibited injury or pain, nor did he claim to

have described why a nurse's attention was necessary or desirable, either medically or otherwise. Viewed objectively, there was no manifestation of medical necessity and nothing, besides the redness itself, which would indicate to a reasonable officer the appropriateness of medical attention. The redness, alone, is insufficient. "There can be no claim against the ... [Chief] for inadequate medical care when there exists no objective evidence that ... [plaintiff] even had a serious need for such attention." *Belcher v. Oliver*, 898 F.2d 32, 35 (4th Cir.1990) (case of pretrial detainee). Here no objective evidence exists of any medical need for attention, and therefore a directed verdict is entered for defendant. This conclusion is unaffected by the fact that plaintiff requested to see a doctor at the Monroe County Jail the next day and, in fact, was seen. No malady was discovered, and plaintiff acknowledges that he did not discover his hearing and eye problems until months later while imprisoned for a collateral offense. Compare *Hodge v. Ruperto*, 739 F.Supp. 873, 879 (S.D.N.Y. 1990) (removal of plaintiff from hospital before diagnosis made of serious injury without justification states a claim).

### CONCLUSION

This memorandum describes the decision to direct a verdict for defendant on plaintiff's denial of medical treatment claim.

SO ORDERED.

---

**2.** The point is not academic. Although asking whether the failure to provide needed medical treatment is reasonably related to a legitimate non-penological purpose is not much different from asking whether the denial of needed medical treatment is objectively reasonable in the totality of circumstances, and similarly interpreted culpability standards would comport with the laudable view that the police do not acquire broader or greater rights to deny needed medical treatment as an arrestee passes from status as an arrestee to one of a pretrial detainee, *Titran v. Ackman*, 893 F.2d at 147 ("It does not follow that officers acquired greater ability

to assault and batter Titran."), *Daniels'* and *Bryant's* rejection of liability based on negligence means that "the search for 'punishment' cannot be wholly objective." *Id.* 893 F.2d at 147. Until the Supreme Court clarifies whether *Daniels* applies to substantive due process cases, *see Zinermon v. Burch*, 110 S.Ct. at 992 (O'Connor, J., dissenting) ("A claim of negligence will not support a *procedural* due process claim") (emphasis supplied), *Bryant* requires application of this "[s]ubtle differenc[e] between Fourth and Fifth Amendment standards." *Titran v. Ackman*, 893 F.2d at 147–48.