958 F.2d 207
 35 Fed. R. Evid. Serv. 53
 Bill D. MORGAN, Appellant/Cross-Appellee,
v.
CITY OF MARMADUKE, ARKANSAS, Appellee/Cross-Appellant,
David Jetton, Individually and as the City Marshall of the
City of Marmaduke, Arkansas, Appellee/Cross-Appellant.
 Nos. 90-2208, 90-2209, 90-2235.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 10, 1991.
Decided Feb. 27, 1992.
 
 John Barttlet, Jonesboro, Ark., argued, for appellant.
 Robert Thompson, Paragould, Ark., argued, for appellee City of Marmaduke.
 Robert Young, Paragould, Ark., argued, for appellee Jetton.
 Before McMILLIAN, Circuit Judge, BRIGHT, Senior Circuit Judge, and BEAM, Circuit Judge.
 BEAM, Circuit Judge.
 
 
 1
 Bill D. Morgan filed this lawsuit, pursuant to 42 U.S.C. § 1983, claiming that the City of Marmaduke, Arkansas, and David Jetton, a police officer in Marmaduke, violated his civil rights by the use of excessive force. Morgan appeals the judgment of the district court, claiming, in part, that (1) the district court improperly excluded certain evidence and (2) the jury's special verdict in favor of the City is an error. Jetton, on the other hand, cross-claims that he is entitled to a new trial because the district court erred in receiving evidence relating to a prior incident of alleged misconduct on his part while working as a police officer for another municipality. We affirm with respect to the City and reverse and remand the judgment against Jetton.
 
 I. BACKGROUND
 
 2
 Late at night on October 8, 1987, Morgan sat on his motorcycle near the gasoline pumps of a service station along Highway 412 in rural Greene County, Arkansas. The business was closed for the day and the service station lot was dark. At about 11:45 p.m., Officer Ronnie Lewis, of the Greene County Sheriff's Office, drove into the service station's lot. He saw Morgan's taillight, knew that the service station was closed, and remembered that the business had been burglarized a few months before. Trial Transcript at 143-45. As Lewis pulled into the gas station, Morgan began to drive away. Lewis turned on his overhead warning lights and followed him. Id. at 146-47. A chase began, but after eight or nine miles Morgan was far ahead and out of Lewis's sight. (Morgan testified at trial that he fled because he did not have a motorcycle endorsement on his license. Id. at 459.)
 
 
 3
 Jetton, who was in his patrol car in Marmaduke, overheard Lewis's radio transmissions during the chase. Jetton left Marmaduke, to assist Lewis, driving south on Highway 139, toward the scene of the chase. Id. at 766-68. About ten miles outside of Marmaduke, Morgan--who was traveling north on the same highway--crashed into Jetton's car. Id. at 799. As a result of the crash, Morgan's left leg had to be amputated.
 
 
 4
 At trial, in April 1990, Jetton and Morgan presented conflicting testimony about how the crash occurred. Morgan testified that he slowed down after eluding Lewis, believing that the chase was over. Id. at 461. Two miles or so later, he saw the headlights of an oncoming car (Jetton's) gradually crossing the centerline of the highway. According to Morgan, Jetton's patrol car did not have its siren or warning lights on as it approached him. Id. at 463. Morgan said that he reacted to Jetton's crossing of the centerline by moving over to the shoulder of the highway. Id. at 464. Just before the two vehicles met, according to Morgan, Jetton swerved his patrol car sharply to the left, blocking the path of Morgan, and causing Morgan to crash into the front fender of the car. Id. at 465-66.
 
 
 5
 Morgan also presented the testimony of his brother, Ricky Morgan, and stepbrother, Eddie Rippy. Ricky Morgan and Rippy testified that they had viewed the accident from the back yard of Morgan's mother's house, which apparently was about three-fourths of a mile from the scene of the accident. Id. at 365-66. Neither Ricky Morgan nor Rippy could provide any details about the accident. Instead, both men testified primarily about the movement of the various headlights on the highway, the sounds of the vehicles' engines, and the time at which--relative to the movement of the headlights--the blue overhead warning lights came on. Id. at 364-68, 399-404. Although in some respects the testimony of Ricky Morgan and Rippy is not consistent, they both testified that they did not see any overhead warning lights until the vehicles came to a stop. Id. at 368, 403. Ricky Morgan also testified, however, that after the accident his brother, Billy, had informed him that "he [Billy] had intended [apparently when he saw Jetton's car] to stand up on the motorcycle and jump the ditch and go out into the field." Id. at 375 (quoting a question posed to Ricky Morgan by the attorney for the City).
 
 
 6
 Jetton's story was considerably different. According to Jetton, he parked his patrol car across the highway, anticipating Morgan's approach. Jetton testified that when he stopped the car Morgan's headlight was just visible in the distance, as the motorcycle came around a curve. Jetton testified further that he placed the patrol car's transmission in park and turned the overhead warning lights on when he set up the roadblock. Id. at 769. According to Jetton, Morgan appeared to try to avoid the roadblock by moving toward the east shoulder of the highway, but crashed into the patrol car just as he, Jetton, was trying to get out of the car. Id. at 770-71. Jetton testified that the crash occurred "approximately a minute or so" after the patrol car had stopped. Id. at 769. Jetton testified further that right after the collision he went to the ditch to find Morgan. Id. at 772.
 
 
 7
 The police dispatcher who recorded and listened to the radio transmissions of Jetton and the other officers also testified. The dispatcher testified that after she heard the sound of the collision, Jetton said, "Oh, he got me, 8" ("8" was a code number for Douglas Nolan, another Greene County Sheriff's officer involved in the chase). Id. at 215-16. The tape recording of the radio transmissions and a transcript of the dialogue between the officers and dispatcher were admitted as evidence. Id. at 196-97. In addition, another law enforcement officer testified that when he arrived at the scene of the accident, shortly after the collision, Jetton was attending to Morgan, who lay injured in the ditch, and Jetton's overhead warning lights were on. Id. at 590, 592.
 
 
 8
 At trial, over Jetton's objection, Morgan presented testimony concerning a prior incident of alleged misconduct by Jetton. Three people--Jetton, Mike Rhodes, and Yvonne Southwell--presented testimony about this incident. According to their accounts, one day in 1984, Jetton, then a police officer for the City of Caraway, Arkansas, was driving on patrol in Caraway with his friend, Rhodes, a civilian. Jetton saw a motorcycle driven by Sterrell Thomas, Jr., "weaving" down a city street. Id. at 254. Jetton pulled up behind the motorcycle and turned on his overhead warning lights. The motorcyclist fled, with Jetton in pursuit. After a few blocks, the chase ended when Thomas was hit from behind by the patrol car as he tried to turn a corner. Id. at 255-56. Jetton testified that he did not intend to hit Thomas, and Rhodes testified that it did not appear Jetton intended to hit Thomas. Id. at 259, 762. Instead, the accident was said to have occurred because of the drunkenness of Thomas (Jetton testified that Thomas was later found to have a blood alcohol content of 0.34 percent) and Thomas's sudden acceleration and deceleration as he fled around the corners of the city streets. Id. at 762-63, 259-60.
 
 
 9
 Southwell testified that she came out of her house when she heard the crash and that she saw Thomas face down on the road, with Jetton on top of him and his knee in Thomas's back. According to Southwell, Jetton was hitting Thomas's "head on the road [and] telling him to get up." Id. at 274. Southwell said Jetton then handcuffed Thomas and, as he was placing Thomas in the patrol car, caused Thomas's head to hit the top of the car. Id. at 276. According to the testimony of Jetton and Rhodes, Southwell's account of the events is incorrect. They said that Thomas was not mistreated in any way during the arrest. Id. at 697, 762.
 
 
 10
 The jury returned a special verdict in favor of the City and a general verdict against Jetton, awarding Morgan damages in the amount of $1,000. The district court, on Morgan's motion for judgment notwithstanding the verdict, increased the damages award to $61,517.56, based on the uncontroverted evidence that Morgan's medical expenses totaled $60,517.56. Morgan claims on appeal, among other points, (1) that evidence of another incident involving Jetton and a motorcyclist was improperly excluded and (2) that he is entitled to a new trial against the City. The City argues that the jury was correct in deciding in its favor. Jetton argues, among other points, that a new trial should be granted because the evidence of the incident in Caraway, Arkansas, was inadmissible and prejudicial. We agree with the City and Jetton.[1]
 
 II. DISCUSSION
 
 11
 A. Evidence of Another Incident with a Motorcycle
 
 
 12
 Morgan argues that the district court erred in excluding evidence of an incident in 1988 involving Jetton using his patrol car to stop a fleeing motorcyclist. According to Morgan, this evidence would have helped to demonstrate that Jetton had a policy or custom "of using his patrol car ... as a dangerous weapon against fleeing motorcyclists." Reply Brief for Morgan at 12. We disagree that the district court erred.
 
 
 13
 According to the voir dire examination of Randy King, the motorcyclist, this incident occurred one night in September 1988, when a police officer in Paragould, Arkansas, attempted to pull King over. King said that he fled from the police officer as "fast as [his motorcycle] would go," traveling north on Highway 49, toward Marmaduke. Trial Transcript at 859. According to King, a few miles outside of Marmaduke, Jetton--who was apparently waiting by the side of the road for King to approach--moved his patrol car across the highway and turned on his headlights and blue overhead lights. King said that he was about one-eighth of a mile from the patrol car when its lights came on. According to King, he had to brake suddenly, but he safely brought the motorcycle to a stop about ten or fifteen feet from the patrol car. Id. at 863. King was later convicted of driving while intoxicated (he had a blood alcohol content of 0.12 percent). Id. at 869.
 
 
 14
 The district court ruled that evidence about this incident was inadmissible. We review this decision under an abuse of discretion standard. United States v. Drew, 894 F.2d 965, 969 (8th Cir.), cert. denied, 494 U.S. 1089, 110 S.Ct. 1830, 108 L.Ed.2d 959 (1990). After reviewing the record, we cannot agree with Morgan that the district court abused its discretion. There is no indication from King's account of the events, for instance, that Jetton intended to stop King by driving his patrol car into an unavoidable collision with the motorcycle or that Jetton in any other way used excessive force. The incident involving King is not entirely dissimilar to Morgan's case, but we cannot say that the district court abused its discretion by refusing to admit this evidence.
 
 B. Morgan's Claim Against the City
 
 15
 Morgan also argues that the district court erred in not granting him a new trial against the City. Morgan claims that the City is liable because the actions of Jetton were the result of an official policy or custom of the City. More specifically, Morgan states that the City--a municipality with only two police officers--had delegated its authority to Jetton "to establish customs and policies for the City as to police procedures," including the use of deadly force, and that "Jetton customarily used his police vehicle to intentionally collide with fleeing motorcyclists," thus making the City "liable ... as a matter of law." Brief for Morgan at 8.
 
 
 16
 The decision whether to grant a new trial because the jury's verdict is against the weight of the evidence is in the sound discretion of the trial court; and, as we have stated before, this is a decision we will reverse only upon a clear showing of abuse of discretion by the district court. See, e.g., Green v. American Airlines, 804 F.2d 453, 454-55 (8th Cir.1986). After reviewing the record, it is clear to us that Morgan has not demonstrated an abuse of discretion. In fact, Morgan has not pointed to any evidence in the record that even raises an inference that Jetton's actions were the result of a policy or custom.
 
 
 17
 Morgan's argument is essentially as follows. Jetton must have been delegated the power to make policy for the City because (1) the City did not have a written or official policy on how to set up roadblocks or how to use deadly force (other than, as the City officials testified, Jetton was expected to follow the law) and (2) the City officials could not explain the correct procedure for setting up a roadblock or using deadly force. This argument is simply without merit. The City's lack of an official or written policy and the inability of the City officials to articulate the law does not establish that the City delegated its policy-making power to Jetton.
 
 
 18
 Furthermore, Morgan argues that Jetton must have had a "custom" of intentionally colliding with motorcycles because the incident with King and the incident in Caraway both involved motorcycles. As we explained above, however, the district court's exclusion of the evidence relating to the King incident was not an abuse of discretion; and, as we explain below, the evidence of the Caraway incident was inadmissible. Neither incident, moreover, has been shown to have involved excessive force insofar as stopping a motorcycle is concerned. Thus, the present case is the only instance in which Jetton allegedly used excessive force to stop a motorcyclist. One alleged incident, "especially if it involved only actors below the policy-making level, generally will not suffice to raise an inference of the existence of a custom or policy." Powell v. Gardner, 891 F.2d 1039, 1045 (2nd Cir.1989). Thus, we affirm the district court's judgment with respect to the City.
 
 C. The Caraway Incident
 
 19
 The district court ruled that the testimony about the chase and arrest of Sterrell Thomas in Caraway, Arkansas, was admissible under Rule 404(b). Before allowing the testimony the district court gave a limiting instruction to the jury, stating that the evidence was "being received only to go to motive, intent or plan or mode of operation." Trial Transcript at 251-52. Jetton objected to this evidence at trial and now claims on appeal that the district court prejudicially erred in allowing the testimony.
 
 
 20
 As stated above, district court decisions about the admissibility of evidence are reviewed by this court under an abuse of discretion standard. Drew, 894 F.2d at 969. This is a difficult standard for Jetton to meet, but nevertheless we agree that the evidence should not have been admitted and that its admission cannot be considered harmless error.
 
 
 21
 We fail to see the probative value of the Caraway incident. One could hardly infer, from the testimony about the collision in Caraway, a motive, intent, or plan or mode of operation by Jetton to cause a collision with Morgan.[2] The only similarity between the Caraway incident and Morgan's collision is that both involved a motorcyclist and Jetton driving a patrol car. In the Caraway incident, for example, Jetton was driving behind Thomas, chasing Thomas around city streets; in Morgan's incident, Jetton met Morgan on a rural highway and allegedly swerved into Morgan's oncoming vehicle in order to stop him. There was also no evidence that Jetton intentionally collided with Thomas in Caraway; in fact, the only evidence on this point was that the collision was not intentional. (Southwell testified that she did not see the chase or accident.) In addition to being so dissimilar, the Caraway incident also occurred at least three years before the collision between Jetton and Morgan.
 
 
 22
 Assuming, however, that evidence about the Caraway incident was otherwise admissible, we are still convinced that Southwell's account of Jetton's purported mistreatment of Thomas had no probative value with regard to the claim of excessive force through use of the police car and had a prejudicial effect against Jetton. The evidence, therefore, should have been excluded under Rule 403.
 
 III. CONCLUSION
 
 23
 Accordingly, we affirm the judgment in favor of the City and reverse the judgment of the district court against Jetton and remand for a new trial on all issues.
 
 
 
 [1]
 The parties raise a number of other issues in their briefs: Morgan argues that he is entitled to a new trial on the issue of damages because the amount awarded, despite the district court's increase, is still inadequate to compensate for his injuries and pain and suffering; Jetton objects to the district court's increase of the jury's damage award; and all sides to this suit argue various evidentiary points. Because we affirm the judgment in favor of the City and remand for a new trial against Jetton, we need not address these other issues
 
 
 [2]
 In any event, issues of motive and intent are essentially irrelevant in this type of case. The test "in an excessive force case is an objective one." Graham v. Connor, 490 U.S. 386, 397, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989). Thus, "[a]n officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." Id