661 So.2d 335 (1995)
The CITY OF HIALEAH, Oscar Amago, and Roland Bolanos, Petitioners,
v.
Victor FERNANDEZ, Respondent.
No. 93-88.
District Court of Appeal of Florida, Third District.
September 27, 1995.
*337 Alejandro Vilarello, City Attorney, and Alan E. Krueger, Assistant City Attorney, for petitioners.
Dennis A. Koltun, Miami, Russo & Talisman and Elizabeth K. Russo, Patrice A. Talisman and Kimberly L. Boldt, Coconut Grove, for respondent.
Before HUBBART, JORGENSON and COPE, JJ.

ON REHEARING AND CLARIFICATION GRANTED
COPE, Judge.
We grant petitioners' motion for rehearing and clarification, withdraw the court's previous opinion, and substitute the following opinion:

I.
In this action, plaintiff/respondent Victor Fernandez seeks damages under 42 U.S.C. § 1983 for alleged violations of his civil rights by defendants/petitioners. Petitioners are the City of Hialeah, a police officer, and the chief of police. The individual defendants originally filed a petition for writ of certiorari seeking review of the trial court's order denying their motions for summary judgment based on claims of qualified immunity. The City filed a petition for writ of certiorari seeking review of the trial court order denying its motion for summary judgment on liability. The petitions were denied.
During the pendency of petitioners' motion for rehearing, the Florida Supreme Court issued its opinion in Tucker v. Resha, 648 So.2d 1187 (Fla. 1994), in which it held that "an order denying summary judgment based upon a claim of qualified immunity is subject to interlocutory review to the extent that the order turns on an issue of law." Id. at 1190; see also Mitchell v. Forsyth, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985) ("[A] district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law is an appealable `final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment."). The court also found "the standard announced by the Supreme Court in Mitchell to be the proper one for reviewing such orders." 648 So.2d at 1190. See generally Johnson v. Jones, ___ *338 U.S. ___, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995).
In accordance with the dictates of Tucker, we find that the order denying the two individual petitioners' motions for summary judgment turned on an issue of law. We treat the individuals' petitions for certiorari as interlocutory appeals and reverse. Because the petition of the City of Hialeah is not based upon qualified immunity, we find that it is not entitled to an interlocutory appeal. We deny the City's petition for certiorari.

II.
Briefly stated, and viewed most favorably to the non-movant Fernandez,[1] the facts here are that at approximately 12:00 a.m. on November 1, 1989 Fernandez was observed by two City of Hialeah police units traveling at a rate substantially in excess of the speed limit and weaving in and out of traffic.[2] The unit operated by Officer Amago immediately began to pursue Fernandez. Officer Amago's unit was backed up by a unit driven by another officer who is not a party to this action. Fernandez did not hear the police sirens because he had his air conditioning turned up very high and was playing his radio loudly. According to the officers, Fernandez traveled about two miles before pulling over. Naturally, Fernandez does not know how long he was pursued before he actually saw the flashing lights and pulled over. After Fernandez stopped, despite offering no resistance,[3] he was pulled out of his vehicle by Officer Amago who forced his left arm behind his back, marched him to the rear of his car and forced him to bend over the trunk of his car by pulling upward on the arm behind his back. Fernandez was then pushed face forward against the trunk of the car while Officer Amago proceeded to handcuff him. Fernandez was then arrested, placed in a police unit, taken to Dade County Jail for booking, and was released that same night. At no time during the arrest or booking procedure did Fernandez make any complaint of unnecessary force or any injury.
Within a day of the arrest, Fernandez went to the Hialeah Police Department where he spoke to an Internal Affairs officer. He described the above events to the Internal Affairs officer and stated that he did not know the exact nature of his injuries, but that they involved his shoulder and mouth. At the time of this meeting, Fernandez had his left arm in a sling. The Internal Affairs officer reviewed the traffic citation and the arrest affidavit and prepared a report of the complaint. The report was submitted to petitioner/defendant Rolando Bolanos, the Chief of Police for the City of Hialeah. Upon review of the report, Bolanos determined that there was not a sufficient basis to warrant further investigation of the allegations.
In February, 1991 Fernandez filed this action seeking damages for the injuries he received and for the violations of his civil rights by the use of excessive force in effecting the arrest.

III.
The United States Supreme Court has said that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 *339 (1982). This is true with respect to both Officer Amago and Chief Bolanos. McKinney v. DeKalb County, 997 F.2d 1440, 1443 (11th Cir.1993).
The Federal Eleventh Circuit has recently summarized the law of qualified immunity as follows:
I. Qualified immunity protects government officials performing discretionary functions from civil trials (and the other burdens of litigation, including discovery) and from liability if their conduct violates no "clearly established statutory or constitutional rights of which a reasonable person would have known." The qualified immunity doctrine means that government agents are not always required to err on the side of caution.
II. That qualified immunity protects government actors is the usual rule; only in exceptional cases will government actors have no shield against claims made against them in their individual capacities. Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit. Because qualified immunity shields government actors in all but exceptional cases, courts should think long and hard before stripping defendants of immunity.
III. For the law to be clearly established to the point that qualified immunity does not apply, the law must have earlier been developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that "what he is doing" violates federal law. Qualified immunity is a doctrine that focuses on the actual, on the specific, on the details of concrete cases.
The most common error we encounter, as a reviewing court, occurs on this point: courts must not permit plaintiffs to discharge their burden [FN3] by referring to general rules and to the violation of abstract "rights."
[FN3] Once the qualified immunity defense is raised, plaintiffs bear the burden of showing that the federal "rights" allegedly violated were "clearly established."
"General propositions have little to do with the concept of qualified immunity." "If case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." [FN4]
[FN4] We leave open the possibility that occasionally the words of a federal statute or federal constitutional provision will be specific enough to establish the law applicable to particular circumstances clearly and to overcome qualified immunity even in the absence of case law.
"The line is not to be found in abstractions  to act reasonably, to act with probable cause, and so forth  but in studying how these abstractions have been applied in concrete circumstances." And, as the en banc court recently accepted:
When considering whether the law applicable to certain facts is clearly established, the facts of cases relied upon as precedent are important. The facts need not be the same as the facts of the immediate case. But they do need to be materially similar. Public officials are not obligated to be creative or imaginative in drawing analogies from previously decided cases.

For qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances.

IV. Because qualified immunity is a doctrine of practical application to real-life situations, courts judge the acts of defendant government officials against the law and facts at the time defendants acted, not by hindsight, based on later events.
V. The subjective intent of government actor defendants plays no part in qualified immunity analysis. Objective legal reasonableness is the touchstone.

*340 VI. A decision on qualified immunity is separate and distinct from the merits of the case ... Immunity contemplates exemption from liability that would otherwise exist on the merits.
Lassiter v. Alabama A & M University, 28 F.3d 1146, 1149-51 (11th Cir.1994) (en banc) (citations and related parentheticals omitted; footnote 2 omitted; emphasis in original); accord Goetz v. Noble, 652 So.2d 1203 (Fla. 4th DCA 1995).
Whether the law was clearly established at the time the claim arose is a legal issue for the court. Elder v. Holloway, ___ U.S. ___, ___, 114 S.Ct. 1019, 1023, 127 L.Ed.2d 344 (1994).

IV.
The plaintiff's claim in this case is that officer Amago used excessive force in handcuffing him. "[A]ll claims that law enforcement officers have used excessive force  deadly or not  in the course of an arrest, investigatory stop, or other `seizure' of a free citizen should be analyzed under the Fourth Amendment and its `reasonableness' standard... ." Graham v. Connor, 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989).[4] "[T]he question is whether the officers' actions are `objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Id. at 397, 109 S.Ct. at 1872. Application of the objective reasonableness standard requires
careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.
The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight... . With respect to a claim of excessive force, the same standard of reasonableness at the moment applies: "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments  in circumstances that are tense, uncertain, and rapidly evolving  about the amount of force that is necessary in a particular situation.
Id. 490 U.S. at 396-97, 109 S.Ct. at 1871-72 (citations omitted); see also Post v. City of Ft. Lauderdale, 7 F.3d 1552, 1559-60 (11th Cir.1993). "Because this standard establishes no bright line, qualified immunity applies unless applications of the standard would inevitably lead every reasonable officer in [defendant's] position to conclude the force was unlawful." Post, 7 F.3d at 1559 (citations omitted).
To apply the foregoing law to Officer Amago, the question we must address is whether the law with respect to the actions allegedly taken by Amago was clearly established. To so determine, we must review the substantive law as to excessive force in relation to the facts here. In making this inquiry, we must view the events most favorably to Fernandez, but from the perspective of Officer Amago.
From his perspective, Officer Amago believed himself to be apprehending a person who had led him on a high-speed chase. Thus, we must determine whether under the law existing at the time and those circumstances, it was constitutionally permissible for Amago to pull Fernandez from his car, push him up against the trunk of the car, and handcuff him.
In the context of a high-speed chase, courts have concluded that arresting officers can reasonably react with some apprehension. Adams v. St. Lucie County Sheriff's Dep't, 962 F.2d 1563, 1578 (11th Cir.1992) (Edmondson, J., dissenting), dissent adopted *341 as majority opinion on rehearing en banc, 998 F.2d 923 (1993). From the officer's viewpoint, Fernandez refused to stop despite the officer's use of siren and lights, and continued to drive away at an excessive speed. The officer was entitled to restrain Fernandez promptly when he finally did stop. Fernandez concedes that the officer had the right to handcuff him, but argues that the officer used excessive force.
Fernandez argues that since he was unaware of the pursuing officers and offered no resistance when he stopped, no force at all should have been used in handcuffing him. Fernandez's argument is misplaced. The officers had no way of knowing that Fernandez's failure to stop and continuing excessive speed was due to inadvertence. As to the force used in handcuffing Fernandez, in comparable circumstances the Eleventh Circuit has rejected the same claim:
Once [plaintiff] was handcuffed and taken outside, no further force was needed. But, even though pushing [plaintiff] against the wall might have been unnecessary, this pushing was not plainly unlawful. .. . That the amount of force [the officer] used, even if unnecessary, was enough to violate the law was not plain; reasonable doubt existed, and still exists, on whether this amount of force was unlawful. [The officer] is entitled to qualified immunity because it was not clearly established that the amount of force used outside the restaurant was unlawful.
Post, 7 F.3d at 1559-60 (citations omitted).
As his other basis to avoid the application of qualified immunity here, Fernandez focuses on what he believes are factual issues which preclude the entry of summary judgment: differences in testimony as to his rate of speed, and whether he in fact offered slight resistance to handcuffing. These minor factual differences are immaterial to a resolution of the question of law now before us. As stated in Rich v. Dollar, 841 F.2d 1558, 1564-65 (11th Cir.1988):
The parties can in a given case make factual showings regarding the acts or omissions of the defendants which create genuine fact issues as to precisely what the defendant's course of conduct was in the given situation. However, these factual disputes do not preclude a grant of summary judgment premised on a defendant's qualified immunity if the legal norms allegedly violated were not clearly established at the time of the challenged actions. Thus, in the context of a § 1983 case, summary judgment would be appropriate as a matter of law, notwithstanding factual disputes on the record regarding the defendant's conduct.
Even under the facts most favorable to Fernandez, Officer Amago simply did not cross any bright line, or violate a clearly-established right when he handcuffed Fernandez. Officer Amago is therefore entitled to summary judgment. We reverse the order under review and remand to the trial court with directions to enter summary judgment in favor of Officer Amago.

V.
Although the law governing the issue of qualified immunity is equally applicable to Chief Bolanos, Fernandez's claims against Chief Bolanos are different than those made against Officer Amago and thus require a different analysis. Fernandez contends that the police chief failed to supervise and train his officers in the proper use of force.
The law is clear that "the inadequacy of police training may serve as the basis for [section] 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." City of Canton v. Harris, 489 U.S. 378, 388, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989). The same deliberate indifference standard applies to claims of inadequate supervision. Greason v. Kemp, 891 F.2d 829, 835-36 (11th Cir.1990).
Further, to establish deliberate indifference by a supervisor requires a substantial showing:
We have set forth three elements necessary to establish supervisory liability under § 1983: (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that *342 posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.
To satisfy the requirements of the first element, a plaintiff must show the following: (1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury to the plaintiff. Establishing a "pervasive" and "unreasonable" risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury.
A plaintiff may establish deliberate indifference by demonstrating a supervisor's "continued inaction in the face of documented widespread abuses." The plaintiff assumes a heavy burden of proof in establishing deliberate indifference because:
[o]rdinarily, [the plaintiff] cannot satisfy his burden of proof by pointing to a single incident or isolated incidents, for a supervisor cannot be expected to promulgate rules and procedures covering every conceivable occurrence within the area of his responsibilities. Nor can he reasonably be expected to guard against the deliberate criminal acts of his properly trained employees when he has no basis upon which to anticipate the misconduct. A supervisor's continued inaction in the face of documented widespread abuses, however, provides an independent basis for finding he either was deliberately indifferent or acquiesced in the constitutionally offensive conduct of his subordinates.
Causation is established when the plaintiff demonstrates an "affirmative causal link" between the supervisor's inaction and the harm suffered by the plaintiff.
Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir.1994) (all citations omitted); see also Brown v. Crawford, 906 F.2d 667, 671 (11th Cir.1990) ("The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences."), cert. denied, 500 U.S. 933, 111 S.Ct. 2056, 114 L.Ed.2d 461 (1991).
Before applying the foregoing to the claims against Chief Bolanos, it is necessary to reiterate that "[q]ualified immunity protects government officials performing discretionary functions from civil trials (and the other burdens of litigation, including discovery) and from liability if their conduct violates no `clearly established statutory or constitutional rights of which a reasonable person would have known.'" Lassiter v. Alabama A & M University, 28 F.3d 1146, 1149 (11th Cir.1994). In other words, the doctrine of qualified immunity protects Chief Bolanos from liability unless it can be shown that the law was clearly established that his conduct was deliberately indifferent to Fernandez's rights. Belcher v. City of Foley, 30 F.3d 1390 (11th Cir.1994) (finding law not clearly established that: 1) failure to have written policy; 2) failure to train; or 3) failure to cover jail door constituted deliberate indifference).
The record before this court simply does not justify such a conclusion here. Fernandez has not cited to, and our research has not located, any decision which clearly establishes that the police chief's alleged failure to supervise and train his officers as to the proper use of force in circumstances similar to those here amounted to deliberate indifference to the rights of the public.
Because at the time of the actions at issue here no decision clearly established that Chief Bolanos's actions or inactions constituted deliberate indifference, he is entitled to qualified immunity. Id. at 1399. We therefore reverse the order under review and remand with directions to enter summary judgment in favor of Chief Bolanos.

*343 VI.
Finally, the claims against the City of Hialeah are before this court on a different ground. Although the City can have liability under section 1983, Monell v. New York City Dep't of Social Servs., 436 U.S. 658, 691-92, 98 S.Ct. 2018, 2035-36, 56 L.Ed.2d 611 (1978), it cannot be held liable on the basis of respondeat superior. Id. Rather, it can be liable only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Id. at 694, 98 S.Ct. at 2037; see also Owen v. City of Independence, 445 U.S. 622, 657, 100 S.Ct. 1398, 1419, 63 L.Ed.2d 673 (1980).
We do not reach the merits of the City's position because the City is not entitled to appeal at this time. Unlike an individual defendant, the City does not enjoy qualified immunity. Owen, 445 U.S. at 657, 100 S.Ct. at 1418. An individual is allowed an immediate appeal of a denial of immunity from suit. However, the City's theory of relief was that on the facts of this case, it simply has no liability to Fernandez. The denial of the City's motion for summary judgment on liability is not subject to an immediate appeal in the federal system, Swint v. Chambers County Comm'n, ___ U.S. ___, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995), and accordingly is beyond the scope of the interlocutory appeal authorized by Tucker v. Resha. See 648 So.2d at 1190.
The City requests, however, that we review the trial court order by way of certiorari. We decline to do so. Certiorari is an extraordinary remedy. Martin-Johnson, Inc. v. Savage, 509 So.2d 1097, 1098 (Fla. 1987). For certiorari to be justified, the trial court "order must depart from the essential requirements of law and thus cause material injury to the petitioner throughout the remainder of the proceedings below, effectively leaving no adequate remedy on appeal." Id. at 1099 (citations omitted). Assuming arguendo that the City's motion for summary judgment should have been granted, the City will have an adequate remedy by appeal at the end of the case. Certiorari therefore does not lie.

VII.
The orders denying the motions of Amago and Bolanos for summary judgment are reversed and the cause remanded with directions to enter summary judgment in their favor.
The City of Hialeah's petition for writ of certiorari is denied.
NOTES
[1] reviewing the denial of a defendant's summary judgment motion, we are required to view the facts  which are taken from the pleadings, interrogatory responses, affidavits, and deposition  in the light most favorable to the plaintiffs. "Thus, what we state as `facts' in this opinion for purposes of reviewing the rulings on the summary judgment motions" are "the facts for present purposes," but they "may not be the actual facts."
Kelly v. Curtis, 21 F.3d 1544, 1546-47 (11th Cir.1994) (citations omitted).
[2] Fernandez was ticketed for going 85 m.p.h. in a 30 m.p.h. zone. During his own deposition, Fernandez stated that his speed was between 55 and 65 m.p.h.
[3] There is some conflicting testimony as to whether Fernandez in fact mildly resisted by twisting his arms. However, because we must view the facts most favorably to Fernandez, we must accept his claim that he offered no resistance.
[4] Fernandez cites to the Fourth, Fifth, Eighth and Fourteenth Amendments. However because the actions at issue here were taken pursuant to a lawful arrest, Graham v. Connor, 490 U.S. 386, 109 S.Ct. 1865, provides the parameters for evaluating the defendants' conduct. Fernandez's reliance on other constitutional amendments is misplaced. Cf. Wilson v. Northcutt, 987 F.2d 719 (11th Cir.1993).