Maurice GOODMAN, Plaintiff,

v.

**TOWN OF GOLDEN BEACH,**
**et al., Defendants.**

No. 96–2079–Civ.

United States District Court,
S.D. Florida.

Oct. 8, 1997.

Martin Berg, Miami, FL, for Maurice Goodman.

Michael T. Burke, Ft. Lauderdale, FL, for Town of Golden Beach.

## ORDER GRANTING SUMMARY JUDGMENT IN FAVOR OF INDIVIDUAL DEFENDANTS AND TOWN OF GOLDEN BEACH

GOLD, District Judge.

Five police officers, sued individually and in their official capacities, and their employer, the Town of Golden Beach, seek summary judgment in this civil rights action filed by Maurice Goodman. The defendants argue that the record is devoid of evidence that they deprived the plaintiff of any right, privilege, or immunity secured by the United States Constitution, and alternatively assert that they are entitled to qualified immunity for the complained-of conduct. Defendants' motion is granted based on a qualified immunity analysis.

### I. FACTS

Maurice Goodman, a resident of the Town of Golden Beach, filed this action pursuant to 42 U.S.C. section 1983. He alleges that the police officers Michael Leoncini, Bruce Hoffman, David Delaney, William Siegel, and Raymond Clark violated his First, Fourth, Fifth, Sixth, and Fourteenth Amendment rights during several altercations spanning a four-year period. His complaint also alleges a claim against the Town of Golden Beach asserting that it did not train its officers concerning the use of force, had no clear policy regarding excessive force, and were indifferent to its use. The material facts,

viewed in the light most favorable to Goodman, are as follows:[1]

**July 30, 1992.** On July 30, 1992, Sargent Leoncini was conversing with one of Goodman's neighbors in a driveway across the street from Mr. Goodman's home. Goodman approached Leoncini, who was standing beside his marked patrol car, and asked why the officer had parked there. Leoncini told Goodman to go home. When the conversation ended, Leoncini started to pull out of the driveway when he heard a loud bang come from left side panel of his police vehicle. Leoncini, thinking that Goodman had kicked the car, got out to question Goodman. Goodman, however, ran from Leoncini and tried to climb over a fence onto his own property. (Defendant's Statement of Undisputed Facts, paragraph 4). Leoncini yelled stop, but Goodman ignored the order. Leoncini took off after him and a struggle ensued. (Defendants' Statement of Undisputed Facts, paragraph 5). During the struggle, Leoncini grabbed Goodman's arms, and kicked him in the shins. (Plaintiff's App. 5 at 49). Goodman thwarted Leoncini's efforts to make an arrest, and fled into his house. Leoncini did not attempt to follow, but the next day he obtained a warrant for Goodman's arrest. But before the warrant was served, Goodman appeared with his attorney before a judge and was released on his own recognizance. In response to the charges filed with respect to this incident, Goodman plead no contest to battery on a law enforcement officer, resisting an officer with violence, and resisting an officer without violence. (Defendants' Statement of Undisputed Facts, paragraph 7).

**February 21, 1993.** Goodman alleges that he and his father attended a town meeting on February 21, 1993. After the meeting was over, Officers Leoncini, Delaney, and Seigal surrounded him and accused him of assaulting a police officer. As Goodman walked away, Delaney raised his arm in a fist and shook it at him. (Plaintiff's Amended Complaint, paragraphs 18–21).

**January 12, 1994.** On January 12, 1994, Leoncini saw Goodman driving a vehicle with an expired tag. Leoncini attempted to make a traffic stop, but Goodman did not pull over.

(Defendants' Statement of Undisputed Facts, paragraph 8). According to Goodman, Leoncini waived a gun at him. (Goodman App. 5 at 64). Goodman proceeded to drive away from the police, but soon became involved in a traffic accident at a nearby intersection. (Defendants' Statement of Undisputed Facts, paragraph 8). Leoncini, with the assistance of Officers Delaney and Hoffman, arrested Goodman as he exited his car. Goodman refused to put his hands behind his back to be handcuffed. (Defendants' Statement of Undisputed Facts, paragraph 9). Although Goodman did not use violence to resist the arrest, the three officers pushed him face forward up against his truck and forced his arms behind his back so cuffs could be applied. (Goodman App. 3 at 55). During this process, Officer Delaney punched Goodman in the upper biceps. (Goodman App. 5 at 71). The officers then put the handcuffs on so tight that they hurt Goodman. (Goodman App. 5 at 71). While still at the accident scene, Goodman complained of chest pains and a seizure. Police called Fire Rescue. Fire rescue workers examined Goodman but saw no visible signs of injury. They concluded that Goodman did not need medical attention. Goodman was then held in the police car for several hours while Leoncini completed paperwork including a four-page Arrest Report, an Incident Report, and four Traffic Summonses. (Goodman's App. 15, 16, 17). During his confinement in the police car, Goodman asked for water and permission to use a bathroom. Both requests were denied. (Goodman's App. 5 at 76). Goodman continued to complain of illness so Leoncini took him to Jackson Memorial Hospital. Although Goodman was arrested at 6:39 p.m., he claims he did not arrive at Jackson until 11:00 p.m. He had been held in the police car from the time of arrest until the time he reached Jackson. At Jackson, Goodman refused treatment. He was then taken to the Dade County jail where he bonded out the next day. Goodman was charged with driving with an expired tag, fleeing a police officer, and reckless driving. (Goodman App. 16, 17, 18).

---

1. See *Lancaster v. Monroe County,* 116 F.3d 1419, 1420 n. 1 (11th Cir.1997) (on motion for summary judgment, district court must view evidence in light most favorable to nonmoving party).

April 5, 1994, July 23, 1994, and May 29, 1996. Goodman alleges that on these days, Officers Leoncini and Delaney followed him in a manner which caused him to fear for his safety. (Plaintiff's Amended Complaint, paragraphs 33–35).

November 8, 1996. A court-ordered demolition of a structure on Goodman's father's property was held on November 8, 1996. Officers Leoncini and Clark were present. (Defendants' Statement of Undisputed Facts, paragraph 13). Maurice Goodman was also there. An altercation arose between Goodman and Jesus Ramos, an employee of the demolition contractor. (Defendants' Statement of Undisputed Facts, paragraph 13). Ramos had a tool box located in the back of his pickup truck. Goodman claimed that his cellular phone was in that tool box. When Goodman attempted to get into the box, Ramos objected. Officer Clark intervened. (Defendants' Statement of Undisputed Facts, paragraph 13). Clark and Goodman struggled over the box. During the struggle, Clark closed the lid to the tool box on Goodman's thumbs. He then pushed Goodman away, onto the ground. (Goodman App. 5 at 91–92.).

## II. PROCEDURAL HISTORY

Goodman filed this action against officers Leoncini, Delaney, Siegel, Hoffman, and Clark, in their individual and official capacities, alleging they violated his First, Fourth, Fifth, Sixth, and Fourteenth Amendment rights by depriving him of the following: (1) freedom from excessive and unreasonable force; (2) freedom from prosecution without probable cause; (3) freedom from unlawful seizure or detention; (4) freedom from unlawful search and seizure; (5) due process rights; and (6) the right to be free from defamatory accusation in connection with an arrest, detention, and prosecution. (Plaintiff's Amended Complaint paragraph 71).[2]

He also sued the Town of Golden Beach under section 1983 alleging that the town by policy, custom, or usage, (1) failed to instruct, supervise, or control its officers with respect to the use of excessive force or wrongful arrest and (2) acted with deliberate indifference to acts of excessive force. (Amended Complaint paragraphs 75–78). In opposition to these claims, the individual defendants deny that they violated the plaintiff's constitutional rights, or they are entitled to qualified immunity because they violated no clearly-established law.

## III. SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only when there are no genuine issues of material fact and judgment is appropriate as a matter of law. *Lancaster v. Monroe County,* 116 F.3d 1419 (11th Cir.1997). The existence of a factual dispute, however, does not preclude the court from granting summary judgment if plaintiff's complaint does not allege a violation of clearly-established law because, if the complaint fails to meet this threshold requirement, any factual disputes existing at the summary judgment stage are not "material." *Bennett v. Parker,* 898 F.2d 1530, 1536 n. 2 (11th Cir.1990). *See also McDaniel v. Woodard,* 886 F.2d 311, 313 (11th Cir.1989) ("That factual disputes remain does not preclude summary judgment based on qualified immunity").

## IV. QUALIFIED IMMUNITY IS A QUESTION OF LAW

Qualified immunity is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985). The Supreme Court has explained that the policies behind qualified immunity dictate that it be decided as early as possible in a case. *See, e.g., Anderson v. Creighton,* 483 U.S. 635, 646 n. 6, 107 S.Ct. 3034, 3042 n. 6, 97 L.Ed.2d 523 (1987) ("[W]e have emphasized that qualified immunity questions should be resolved at the earliest possible stage of a litigation."); *see also Hill v. Dekalb Regional Youth Detention Center,* 40 F.3d 1176, 1184 (11th Cir.1994) (since

---

**2.** Plaintiff alleges that the defendant police officers deprived him of his constitutional rights "willfully, intentionally, and maliciously." Qualified immunity, however, invokes an objective standard—whether a reasonable person in the defendant's place could have acted the same way. Subjective malice is irrelevant to this inquiry. *Post,* 7 F.3d at 1558 n. 6.

qualified immunity protects government officials performing discretionary functions from litigation, including discovery and trial, the validity of this protection must be determined as early as possible in the lawsuit). A government official's entitlement to qualified immunity is a question of law that is appropriately determined before trial in one of three ways: (1) on a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6); (2) in a request for judgment on the pleadings in accordance with Federal Rule of Civil Procedure 12(c); or (3) on motion for summary judgement pursuant to Federal Rule of Civil Procedure 56. *Ansley v. Heinrich*, 925 F.2d 1339, 1347 (11th Cir.1991). Once a government official or employee raises a qualified immunity defense, the plaintiff bears the burden of showing that the federal rights allegedly violated were "clearly established." *Parrish v. Nikolits*, 86 F.3d 1088, 1094 (11th Cir.1996); *Lassiter v. Alabama A & M Univers.*, 28 F.3d 1146, 1150 n. 3 (11th Cir.1994). In this case all the individual defendants raised qualified immunity defenses in their answers. (Defendants' Answers to Amended Complaint at paragraph 85). This affirmative defense is therefore procedurally available to them. Furthermore, the material facts of the case are undisputed. Thus it is appropriate for this Court to resolve the question of defendants' entitlement to qualified immunity on motion for summary judgment.

## V. OBJECTIVE–REASONABLENESS TEST

The Supreme Court has developed an objective-reasonableness test for evaluating actions involving a government official's claim of qualified immunity. "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Thus unless a government official's act is so obviously wrong, in light of pre-existing law, that only a plainly

incompetent officer or one who was knowingly violating the law would have done such a thing, the government official has immunity from suit. *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986); *Courson v. McMillian*, 939 F.2d 1479, 1486 (11th Cir.1991).

The Eleventh Circuit has developed a two-part analysis for applying the objective-reasonableness test to a qualified immunity defense. First the government official must prove he was acting within the scope of his discretionary authority when the complained-of acts took place. Once this requirement is met, the burden shifts to the plaintiff to show lack of good faith on the defendant's part. This burden is satisfied by proof demonstrating that the government official's actions violated clearly-established constitutional law. *Rich v. Dollar*, 841 F.2d 1558, 1563 (11th Cir.1988) (quoting *Zeigler v. Jackson*, 716 F.2d 847, 849 (11th Cir.1983)). In addressing the second component of the *Zeigler/Rich* objective-reasonableness test, the court must conduct a two-part analysis. It must decide whether the law allegedly violated was clearly established at the time of the official's violation.[3] Then it must determine whether there is a genuine issue of fact concerning the government official's violation of that clearly-established law. *Courson*, 939 F.2d at 1488; *Rich*, 841 F.2d at 1563–65. It is undisputed that defendants Leoncini, Hoffman, Delaney, Siegel, and Clark were acting within the course and scope of their employment as police officers when the alleged wrongful acts occurred. See (Plaintiff's Amended Complaint, paragraph 5). Thus the issue before this Court is whether the law was clearly established at the time of the alleged violation and whether the officers' conduct violated that clearly-established law. This Court will address each of the alleged constitutional violations separately.

**A. Excessive Force.** Goodman claims that the individual defendants violated his constitutional rights by using excessive force when arresting him on July 30, 1992 and January 12, 1994, and when Officer Clark intervened

---

**3.** "Clearly established" means that the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Courson*, 939 F.2d at 1488.

in Goodman's altercation with Jesus Ramos on November 8, 1996. The following acts of force performed by defendants are those which Goodman alleges as constitutional violations. 1. Officer Leoncini grabbed his arms and struck him on the legs while attempting to arrest him on July 30, 1992. 2. Leoncini pushed Goodman up against his truck and twisted his arms behind his back in an attempt to handcuff him on January 12, 1994. 3. Officers Delaney and Hoffman assisted Leoncini in the January 12 arrest, pushing Goodman against his vehicle and twisting his arms back. 4. Delaney hit Goodman on his biceps while making that January 12 arrest. 5. During the January 12 arrest, the officers placed the handcuffs on too tightly. 6. Officer Clark closed the lid of the toolbox on Goodman's thumbs and then pushed him away, and onto the ground during the November 8, 1996 demolition altercation. Goodman alleges that his constitutional rights were violated because these actions were both unnecessary and excessive.

 But Goodman's allegation that the force used was unnecessary and excessive does not defeat the defendants' entitlement to qualified immunity. Even if the force used by the officers in arresting, handcuffing, or controlling Mr. Goodman was unnecessary and excessive, the officers are entitled to qualified immunity unless it was clearly established that the amount of force used was unlawful. Under the law of this circuit, officers are clearly allowed to use some force in controlling suspects. In comparable circumstances, the Eleventh Circuit has written:

Once [plaintiff] was handcuffed and taken outside, no further force was needed. But, even though pushing [plaintiff] against the wall might have been unnecessary, this pushing was not plainly unlawful.... That the amount of force [the officer] used, even if unnecessary, was enough to violate the law was not plain; reasonable doubt existed, and still exists, on whether this amount of force was unlawful. [The officer] is entitled to qualified immunity because it was not clearly established that the amount of force used outside the restaurant was unlawful.

*Post v. City of Ft. Lauderdale,* 7 F.3d 1552, 1559–60 (11th Cir.1993). Courts apply Fourth Amendment standards of objective reasonableness in analyzing claims of excessive force. *Morreale v. City of Cripple Creek,* 113 F.3d 1246 (10th Cir.1997). Police officers will not be found to have violated the Fourth Amendment if their actions were "objectively reasonable" in light of the facts and circumstances confronting them at that time. *Graham v. Connor,* 490 U.S. 386, 397, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989). The court must consider such factors as the need for force, the relationship between the need and the amount of force used, and the extent of the injury inflicted. *Byrd v. Clark,* 783 F.2d 1002, 1006 (11th Cir.1986); *Williams v. Kelley,* 624 F.2d 695, 697 (5th Cir.1980). "Not every push or shove, even if it may seem unnecessary in the peace of a judge's chambers" violates the Fourth Amendment. *Graham,* 490 U.S. at 396, 109 S.Ct. at 1872. Reasonableness must account for the fact that police officers are sometimes forced to make split-second judgments under circumstances that are tense and rapidly evolving. *City of Hialeah v. Fernandez,* 661 So.2d 335, 340 (Fla. 3d DCA 1995). There is no bright-line standard regarding the use of force. Thus qualified immunity applies unless the circumstances would inevitably lead a reasonable officer in the defendant's position to conclude that the force used was unlawful. *Gold v. City of Miami,* 121 F.3d 1442 (11th Cir.1997); *Post v. City of Ft. Lauderdale,* 7 F.3d 1552, 1559 (11th Cir. 1993). Furthermore, the reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, not by hindsight.

 The use of force during the attempted arrests on July 30, 1992 and January 12, 1994, as viewed from the defendant officers' perspectives, was not clearly unlawful. One factor to be considered in determining whether the use of force was necessary is whether the suspect was resisting arrest or fleeing. *Gold,* 121 F.3d at 1446–47; *Post,* 7 F.3d at 1559. Goodman fled from police and resisted arrest on both July 30th and January 12. After the incident on July 30th, he plead no contest to resisting an officer with violence, thus the officers could have feared for their safety. Faced with a fleeing, uncooperative suspect, these officers could rea-

sonably have thought the use of force was necessary.

Nor was the amount of force used on these dates clearly unlawful. There is no constitutional prohibition against the use of *de minimis* force unless the force is the sort "repugnant to the conscience of mankind." *Whitley v. Albers*, 475 U.S. 312, 327, 106 S.Ct. 1078, 1088, 89 L.Ed.2d 251 (1986). The amount of force used by the officers in this case does not appear to have been substantial because there is no evidence of physical injury. After the January 12, 1994 incident, Goodman was immediately examined by fire rescue personnel who found no visible signs of injury and concluded that he needed no medical attention. In one recently-decided case, the 11th Circuit held that qualified immunity protected police officers from liability from the plaintiff's claim of excessive force where the suspect suffered minor skin abrasions from handcuffs applied too tightly, but did not seek medical attention. *Gold v. City of Miami*, 121 F.3d 1442 (11th Cir.1997).[4] In another decision, the 11th Circuit held that qualified immunity applied to police officers who slammed a suspect against the wall, kicked his legs apart, and forced him to raise his hands in way that caused pain and required medical treatment. The court reasoned that because the amount of actual force used was minimal, and the injuries inflicted were minor, use of such force would not inevitably lead an government official in the officer's position to conclude that the force was unlawful. *Jones v. City of Dothan*, 121 F.3d 1456 (11th Cir.1997).

Goodman did not need medical treatment after the incidents in July 1992 and November 1996. Although the severity of an injury is not the determinative factor in assessing whether a constitutional deprivation has occurred, it is probative of the amount of force used. *Byrd*, 783 F.2d at 1006. Some injuries may be so minor in nature that they are insufficient to constitute a constitutional violation, although they may be repressible as a state tort claim. *Id.*

Goodman also has asserted a Fourteenth Amendment claim. Although his complaint did not specify exactly which actions violated the Fourteenth Amendment, individuals who have not been actually seized by an officer have a Fourteenth Amendment substantive due process right to be free from excessive force. *Jones v. City of Dothan*, 121 F.3d 1456 (11th Cir.1997). On November 8, 1996, Goodman became involved in an altercation with Jesus Ramos in which Officer Clark intervened. Goodman was not arrested during the incident but his amended complaint alleges that Officer Clark applied unnecessary force to his arm. (Amended complaint paragraph 59). At his deposition, Goodman testified that during the encounter with Ramos, Clark closed a toolbox lid on his thumb and pushed him away from the box and onto the ground. (Goodman Ex. 5 at 91–92). Accepting either of Goodman's version of the events, Clark's actions did not cross any constitutional line. In evaluating substantive due process claims for excessive force, courts look to the same factors used to evaluate Fourth Amendment excessive force claims—the need and amount of force used, the extent of the injury inflicted, and whether the force was used to maintain or restore discipline or for the sole purpose of causing harm. *Jones*, 121 F.3d at 1460–61. Although Officer Clark's actions don't appear to have been necessary or proper, Goodman's allegations, standing alone, do not establish a constitutional violation under the standards set forth in *Post* and *Gold*. *See also Jones* (officer who yelled at suspect's wife, twice told her to shut up, then stuck his finger in her face, touching skin and causing a burning sensation, did not violate wife's substantive due process rights).

**B. Probable Cause.** The standard for determining whether the officers are entitled to qualified immunity on Goodman's claims of arrest without probable cause is whether, on the date of the arrest, the officers had arguable probable cause to believe that Goodman had committed the

---

4. For more cases dealing with the application of tight handcuffs, see *Morreale v. Cripple Creek*, 113 F.3d 1246 (10th Cir.1997); *Hialeah v. Fernandez*, 661 So.2d 335 (Fla. 3d DCA 1995); *Hannula v. City of Lakewood*, 907 F.2d 129 (10th Cir.1990)

(noting that "while loosening tight handcuffs may be the most compassionate action, the failure to do so does not rise to a clearly established violation").

crimes charged. *Von Stein v. Brescher*, 904 F.2d 572, 579 (11th Cir.1990). With regard to the attempted arrest[5] on July 30, 1992, Goodman claims that Officer Leoncini had no probable cause to arrest him after the loud banging noise was heard coming from the rear side door of the police car. But Goodman ignores the fact that Leoncini did not attempt the arrest until after Goodman had fled the scene and had refused Leoncini's order to stop. Goodman also ignores the struggle he engaged in with Leoncini. He does not dispute that he subsequently plead no contest to the charges of battery on a law enforcement officer and resisting arrest with violence. On these facts, this Court concludes that a reasonable officer under the same circumstances could reasonably have concluded that probable cause to arrest existed. *Eubanks v. Gerwen*, 40 F.3d 1157, 1160 (11th Cir.1994). The only time an arrest was affected in this case was after the incident on January 12, 1994, when Goodman refused to stop after Leoncini observed him driving a car with an expired tag. Goodman admits that the tag had expired. He admits that he drove away from the police. (Goodman Ex. 5 at 64). Under these circumstances, the officers had probable cause to make the arrest. For even if it is assumed that the officers lacked probable cause to arrest Goodman when they saw him driving with an expired tag, the resulting arrest was rendered lawful by Goodman's attempt to flee and his failure to submit to the officer's lawful show of authority. *See Fla.Stat. section 901.15* (a law enforcement officer may arrest a person without a warrant when the person has committed a felony or misdemeanor or violated a municipal or county ordinance in the presence of the officer).

**C. Unlawful seizure and detention.** Goodman alleges that the police officers violated his constitutional rights by holding him in a locked police car for four and a half hours and denying him water and the use of a bathroom during his confinement. He testified on deposition that after he was arrest-

ed on January 12, 1994, Officer Leoncini detained him in his police vehicle for about four and a half hours before he was taken to Jackson Memorial Hospital. (Plaintiff's Statement of Undisputed Facts, paragraph 9). He further alleges that during his detention, his requests for water and permission to go to the bathroom were denied. (Goodman's App. 5 at 76). According to Officer Delaney's deposition, the wait was approximately three hours. (Goodman's App. 3 at 57).[6] For purposes of summary judgment, this Court accepts Goodman's allegations as true. *Hudgins v. City of Ashburn*, 890 F.2d 396, 403 (11th Cir.1989).[7] Both parties agree that the following events took place during Goodman's confinement. After he was arrested, Goodman told the police officers that he was sick or injured. The police called Fire Rescue. Personnel from Fire Rescue arrived on the scene, examined Goodman, and determined that he did not need medical attention. It is not clear from the record, however, exactly how long the examination took. The parties agree that after the examination, the arresting officer used some of the detention period to complete Goodman's paperwork. This paperwork included one arrest affidavit, four traffic citations, one four-page incident report, and a four-page offense report. (Goodman's App. 5 at 15–18). It is not clear how long it took the officer to prepare these reports.

This Court has already found that the officers had probable cause to arrest Goodman for driving with an expired tag and fleeing a police officer. Once arrested, they were lawfully entitled to detain him until he could be brought before a judicial officer. *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); *Burch v. Apalachee Community Mental Health Servs.*, 840 F.2d 797, 807 (11th Cir.1988). The inquiry then is whether detaining Goodman in a police car for four and a half hours, during which time Fire Rescue was called, Goodman was examined, and the arresting officer prepared an

---

**5.** The arrest was not completed because Goodman ran away.

**6.** The arrest report clearly reflects that Goodman was arrested at 6:39 p.m. (Goodman App. 15). Neither party submitted the hospital records as evidence of the arrival time.

**7.** What are considered to be facts at summary judgment stage may not turn out to be the actual facts if the case goes to trial, but are treated as facts for purpose of deciding the motion. *Cottrell v. Caldwell*, 85 F.3d 1480, 1486 (11th Cir. 1996).

arrest affidavit, four traffic citations, an offense report, and an incident report, and depriving Goodman of water and the use of a bathroom, (hereinafter "detention circumstances") violated Goodman's constitutional rights.

 Plaintiff's complaint seems to allege a Fourth–Amendment violation with regard to this claim. But it is unclear under existing 11th Circuit law whether the Fourth Amendment affords protection to a pretrial detainee. *See Vineyard v. County of Murray,* 990 F.2d 1207 (11th Cir.1993) (declining to decide whether the Fourth Amendment protects the rights of a pretrial detainee); *Wright v. Whiddon,* 951 F.2d 297 (11th Cir. 1992) (same). In contrast, the law is well established in the 11th Circuit that claims involving the mistreatment of arrestees or pretrial detainees in custody invoke the protection of the Fourteenth Amendment's due process clause. *Cottrell v. Caldwell,* 85 F.3d 1480 (11th Cir.1996); *Vineyard,* 990 F.2d at 1211. The distinction is important because, under the Fourth–Amendment standard, the court must apply the Fourth Amendment's reasonableness test. *Freece v. Young,* 756 F.Supp. 699, 701 (W.D.N.Y.1991). The test is an objective one. The question is whether the officer's actions are objectively reasonable in light of the facts and circumstances confronting them without regard to their underlying intent or motivation. *Graham v. Connor,* 490 U.S. 386, 397, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989). In contrast, the Fourteenth Amendment due process clause protects a pretrial detainee from mistreatment that rises to the level of "deliberate indifference" to a substantial risk of serious harm. *Cottrell,* 85 F.3d at 1490 (*quoting Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). Under the due process clause, the standard of culpability has both an objective and subjective component. *Cottrell v. Caldwell,* 85 F.3d 1480, 1491 (11th Cir.1996). With regard to a mistreatment claim, the plaintiff must satisfy the objective component by showing that the violation is "objectively, sufficiently, serious" that it resulted in the "denial of the minimal civilized measure of life's necessities." *Farmer,* 511 U.S. at 834, 114 S.Ct. at 1977; *Cottrell,* 85 F.3d at 1491. If that objective component is established, an in custody mis-

treatment claim will still fail unless the plaintiff shows that the defendant had a "sufficiently culpable state of mind." *Farmer,* 511 U.S. at 834, 114 S.Ct. at 1977; *Cottrell,* 85 F.3d at 1491. A culpable state of mind is one which evinces a "deliberate indifference" to the detainee's health or safety. *Cottrell,* 85 F.3d at 1491.

 Applying these standards to the facts of this case, the defendants are entitled to a summary judgment on this claim. If the claim is analyzed as a Fourteenth Amendment due process violation for mistreatment of a detainee, the plaintiff has failed to present any evidence that the defendants knew their behavior, in detaining Goodman under the "detention circumstances", would cause a risk to Goodman's health or safety. Furthermore, although Goodman may have suffered through those four and a half hours, the deprivation was not "objectively, sufficiently, serious" as to constitute a "denial of the minimal civilized measure of life's necessities." Consequently, Goodman cannot prevail on a Fourteenth Amendment due process claim. *See Cottrell,* 85 F.3d at 1490–91 (officers entitled to qualified immunity after aeriest held in police car with his feet on the rear seat and head in space between front and rear seats, died of "position asphyxiation" because plaintiff failed to present facts showing the defendant disregarded an excessive risk).

 Even if the Fourth Amendment applied to the claim, the officers would be entitled to qualified immunity because the law in effect at the time of the detention did not clearly establish that it was illegal to hold an arrestee under the "detention circumstances." A government official who violates an individual's constitutional rights may still escape liability if his conduct did not violate "clearly established statutory or constitutional rights of which a reasonable person would know." *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738. If case law, in factual terms, has not staked out a bright-line rule, qualified immunity almost always protects the defendant. *Kelly v. Curtis,* 21 F.3d 1544, 1550 (11th Cir.1994). The plaintiff in this case has not met his burden to show that when the "detention circumstances" occurred, the law was

developed, in a concrete and factually defined context, so it would have been readily apparent to a reasonable police officer that his conduct was unconstitutional. Plaintiff has not presented the Court with any decisional law from the United States Supreme Court, 11th Circuit, or elsewhere which states that these "detention circumstances", following a legal arrest, were unlawful. For this reason the officers are immunized from this section 1983 claim of illegal detention/mistreatment. *See Gonzalez v. Tilmer*, 775 F.Supp. 256, 262 (N.D.Ill.1991) (finding no constitutional deprivation where detainee did not receive food from time of his arrest until late in the afternoon of the next day).

**D. Unlawful search.** The amended complaint in this case is not clear as to which specific police actions allegedly violated Goodman's freedom from unlawful search. No evidence has been presented which could support a finding by a jury that the police conducted an illegal search. The law is clear that once a public official raises a qualified immunity defense, the plaintiff bears the burden of coming forward with sufficient facts to show that the defendant's conduct violated the law. *The Gehl Group v. Koby*, 63 F.3d 1528 (10th Cir.1995). Because Goodman has failed to meet this burden, the defendant police officers are entitled to qualified immunity on this claim.

**E. Defamation.** Goodman's amended complaint alleges a "violation of Plaintiff's First Amendment right to be free from defamatory accusation in connection with his arrest, detention, and prosecution." In analyzing qualified immunity claims, the court must first ask if a plaintiff has asserted a violation of a constitutional right at all, and then assess whether the right was clearly established at the time of defendant's actions. *Siegert v. Gilley*, 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991). The First Amendment does not immunize plaintiffs from prosecution under Florida's generally applicable and otherwise valid laws regarding resisting arrest, fleeing a police office, and battery on a police officer. *Id.* at 1534. Plaintiff contends that the police officers made false statements in written charging documents. But the plaintiff has failed to produce any evidence at all in support of this allegation. Plaintiff was subjected to

only two prosecutions, and this Court has already held that those prosecutions were supported by probable cause. Thus, on the record before this Court, the defendant police officers are entitled to qualified immunity because there is no evidence of a First Amendment violation.

## VI. MUNICIPAL DEFENDANT

A claim of inadequate training and supervision under section 1983 cannot be made out against a supervisory body without a finding of constitutional violation by the persons supervised. *City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S.Ct. 1571, 1573, 89 L.Ed.2d 806 (1986). Furthermore, if a plaintiff has suffered no constitutional injury at the hands of an officer, the fact that departmental regulations may have authorized the use of constitutionally excessive force is irrelevant. 475 U.S. at 799, 106 S.Ct. at 1573; *Rooney v. Watson*, 101 F.3d 1378 (11th Cir.1996). In light of this Court's finding that Goodman's constitutional rights were not violated, the Town of Golden Beach is entitled to summary judgment.