805 So.2d 1018 (2001)
Richard MOODY, Sr., Kathleen Moody, Richard Wyatt Moody and Raymond Earl Thorn, Appellants,
v.
CITY OF KEY WEST, Bernard "Bear" Barrios, Kenneth A. Stinson, Joseph Tripp, Kurt Allen Stephens, Thomson Street Corporation d/b/a Friendly Cab Company, and Billy Lee Chamblin, Appellees.
No. 3D01-123.
District Court of Appeal of Florida, Third District.
December 26, 2001.
Rehearing Denied February 20, 2002.
*1020 Richard Taylor, Jr., Longwood, for appellants.
David J. Audlin, Jr., Key West, for appellees.
Before COPE, FLETCHER and RAMIREZ, JJ.
COPE, J.
This is an appeal of a summary judgment in favor of the City of Key West and city police officers in an action brought under 42 U.S.C. § 1983 and for common law torts. We affirm in part and reverse in part.

I.
At approximately 2:30 a.m. on October 29, 1994, a taxi driver called the Key West Police Department to report that Steve Brown was throwing full beer cans at cars in a Key West intersection.[1] Steve Brown was accompanied by plaintiff Ray Thorn, but there was no claim that Thorn threw anything.
Police officer Kenneth A. Stinson arrived to investigate. He found a beer can that the taxi driver said had been thrown at passing traffic.
In the meantime, Brown and Thorn had gone to the residence of plaintiffs Richard Moody, Sr., Kathleen Moody, and Richard Wyatt Moody. This was a very short distance from the intersection. Brown and Thorn were staying at that address.
The taxi driver had followed Brown and Thorn to the Moody home. By the time the police officer arrived, Brown had already gone inside the residence. The taxi driver told the officer that the man he wanted was inside. Plaintiff Thorn was still outside.
Taking the facts in the light most favorable to the plaintiffs, as the nonmoving parties,[2] Officer Stinson entered the front yard and Thorn attempted to go inside. According to Thorn, Officer Stinson stuck his foot in the front door as plaintiff Thorn went inside. Thorn was thrown to the floor, and was arrested.[3]
The Moodys were awakened by the noise and came to the front area of the house. The plaintiffs say that Officer Stinson, assisted by some of the other defendant police officers, threw Richard Moody, Sr., and Richard Wyatt Moody to the floor and arrested them. Kathleen Moody was not arrested.
At this point, Steve Brown emerged from his bedroom at the rear of the house and came to the front hallway, where he was arrested for throwing a beer can.
The charges against Richard Moody, Sr., and Richard Wyatt Moody were nolle *1021 prossed. Thorn entered a plea to reduced charges of simple battery and resisting arrest without violence.
The Moodys and Thorn (collectively "plaintiffs") brought this civil lawsuit against the City of Key West and police officers Kenneth A. Stinson, Bernard Barrios, Joseph Tripp, and Kurt Allen Stephens.[4] The plaintiffs alleged that the defendants had violated 42 U.S.C. § 1983 and committed common law torts. They claimed in substance that the police officers had impermissibly entered the Moodys' home without a warrant, made wrongful arrests, and used excessive force.
The City and the police officers moved for summary judgment. The motion was based in part on the merits of the plaintiffs' claims, and with regard to the police officers, the doctrine of qualified immunity. The trial court entered summary judgment and this appeal follows.

II.
We affirm the summary judgment with respect to the City of Key West. It is settled that there is no respondeat superior liability for a city under 42 U.S.C. § 1983. Monell v. Department of Social Servs., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Thus, the City has no respondeat superior liability under section 1983 for the alleged wrongdoing of the individual police officers in this case.
The plaintiffs have not pointed to any facts in the record which would establish any other basis for section 1983 liability for the City. See generally Board of County Comm'rs v. Brown, 520 U.S. 397, 403-04, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997); 2 Steven H. Steinglass, Section 1983 Litigation in State Courts § 15.2(a) at 15-28 to 15-34 (2000).

III.
We affirm the summary judgment in favor of all defendants insofar as plaintiff Thorn bases his section 1983 claims and state law claims on wrongful arrest or wrongful detention. We do so because plaintiff Thorn entered a plea to the reduced charges of simple battery and resisting arrest. "[I]n the absence of fraud, prejudice, or any other corrupt means, a conviction is [a] sufficient determination of the element of probable cause, even if it may be subsequently reversed." Carter v. City of St. Petersburg, 319 So.2d 602, 604 (Fla. 2d DCA 1975).
Plaintiff Thorn entered a plea to criminal charges in this case. He cannot now sue the police alleging that very arrest and detention were wrongful. This ruling does not, however, bar plaintiff Thorn's causes of action insofar as they assert that the defendants used excessive force.

IV.
With regard to the section 1983 claims against the defendant police officers, the officers asserted they were entitled to qualified immunity. In the ordinary case, police officers are entitled to qualified immunity which shields them from personal liability under section 1983. City of Hialeah v. Fernandez, 661 So.2d 335, 339 (Fla. 3d DCA 1995) (citing Lassiter v. Alabama A & M University, 28 F.3d 1146 (11th Cir.1994) (en banc)).
In order for the plaintiffs to overcome the claim of qualified immunity, the plaintiffs must show that the defendant officers violated clearly established law of *1022 which a reasonable person would have known. City of Hialeah v. Fernandez, 661 So.2d at 338 (citing Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). The law must have been clearly established at the time of the conduct complained of, which in this case was October 29, 1994.
As the case law has explained:
For the law to be clearly established to the point that qualified immunity does not apply, the law must have earlier been developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that "what he is doing" violates federal law. Qualified immunity is a doctrine that focuses on the actual, on the specific, on the details of concrete cases.
The most common error we encounter, as a reviewing court, occurs on this point: courts must not permit plaintiffs to discharge their burden by referring to general rules and to the violation of abstract "rights."
"General propositions have little to do with the concept of qualified immunity." "If case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant."
"The line is not to be found in abstractionsto act reasonably, to act with probable cause, and so forth-but in studying how these abstractions have been applied in concrete circumstances." And, as the en banc court recently accepted:
When considering whether the law applicable to certain facts is clearly established, the facts of cases relied upon as precedent are important. The facts need not be the same as the facts of the immediate case. But they do need to be materially similar. Public officials are not obligated to be creative or imaginative in drawing analogies from previously decided cases.
For qualified immunity to be surrendered, preexisting law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances.
City of Hialeah v. Fernandez, 661 So.2d at 339 (quoting Lassiter, 28 F.3d 1146) (citations, footnotes, and related parentheticals omitted). "Whether the law was clearly established at the time the claim arose is a legal issue for the court." City of Hialeah v. Fernandez, 661 So.2d at 340 (citation omitted).
In determining whether the law was clearly established, the relevant case law consists of (1) "cases of controlling authority in [the] jurisdiction at the time of the incident which clearly established the rule on which [plaintiffs] seek to rely," or (2) "a consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful." Wilson v. Layne, 526 U.S. 603, 617, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999).
The plaintiffs claim that the defendant officers violated their right to be free from unreasonable search and seizure by entering the plaintiffs' home without a warrant in order to arrest Steve Brown. Under Fourth Amendment principles, an officer must have a warrant to arrest an individual inside a home, unless there is (1) consent to the entry; (2) hot pursuit; or (3) other exigent circumstances. Welsh v. Wisconsin, 466 U.S. 740, 749-53, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984); Wike v. State, 596 So.2d 1020, 1024 (Fla.1992).
*1023 The defendant officers maintain that this was a proper case of hot pursuit of Steve Brown. Under this analysis, the police responded to a call from the taxi driver and went to the Moody residence. Brown was already inside the Moody home. According to the officers' analysis, because they had responded promptly to the report of criminal activity, they were entitled to enter the house to make the arrest.
We think the law is clearly established that the foregoing does not amount to hot pursuit. In Welsh, a witness saw a car driving erratically which swerved off the road and stopped in an open field. 466 U.S. at 742, 104 S.Ct. 2091. The driver left the car and walked home. When the police arrived, the witness explained what had happened and directed the officers to the driver's home. The police officers entered and made a warrantless arrest.
The police officers contended, among other things, that their entry into the home was authorized as being made in hot pursuit of the driver. The United States Supreme Court said, "On the facts of this case ... the claim of hot pursuit is unconvincing because there was no immediate or continuous pursuit of the petitioner from the scene of the crime." Id. at 753, 104 S.Ct. 2091.
In this case, when the police arrived at the Moody residence, Brown was already inside. There was no immediate or continuous pursuit of Brown originating outside the house and continuing into the house. There has been no argument that there was any other emergency or exigent circumstance. See Welsh, 466 U.S. at 750, 752-53, 104 S.Ct. 2091.
We therefore reverse the summary judgment with respect to the entry into the home for the purpose of arresting Steve Brown. Based on this summary judgment record, the defendant officers who entered the house are not entitled to section 1983 qualified immunity insofar as they entered the house to arrest Steve Brown.

V.
It is necessary to consider whether the police officers were entitled to pursue Thorn into the house. This issue is significant on the question of whether the officers were entitled to enter the home without a warrant on any theory. The initial entry into the Moody home and physical encounter with the Moodys occurred when Officer Stinson entered in pursuit of Thorn and arrested him.
The trial court held that Officer Stinson pursued Thorn into the home during hot pursuit of Thorn as a fleeing felon. The summary judgment order states that the taxi driver reported Thorn to have thrown full beer cans at traffic, along with Steve Brown. The judge reasoned that there was probable cause to arrest both Thorn and Brown for throwing a deadly missile in violation of section 790.19, Florida Statutes. According to the summary judgment order, when the officer told Thorn he was under arrest, Thorn fled into the house and the officer was allowed to enter the home in hot pursuit.
The problem with the analysis is that it is not supported by the record. The taxi driver testified that he identified the beer can thrower as Brown, not Thorn, and told Officer Stinson that the man he wanted was inside the house. Thus there was no probable cause to arrest Thorn for throwing a deadly missile under section 790.19.
For summary judgment purposes the court accepted the officer's testimony that he told Thorn he was under arrest (for obstructing an investigation), and that Thorn attempted to flee into the house. But Thorn denies ever being told he was under arrest at all, and states that the officer without explanation attempted to prevent him from entering the house.
*1024 Reading the summary judgment record in the light most favorable to the plaintiffs as the nonmoving parties, the summary judgment cannot be sustained on the theory that Officer Stinson was in hot pursuit of Thorn.

VI.
With regard to the state law claims, there are likewise disputed issues of material fact which preclude summary judgment. Again, the summary judgment order viewed the facts in the light most favorable to the defendants as the moving parties. The facts should have been read in the light most favorable to the plaintiffs, as nonmoving parties.
We reverse the summary judgment on the state law claims, with the exception of Thorn's claims based on false arrest and wrongful detention.

VII.
For the stated reasons, the summary judgment is affirmed in part, reversed in part, and remanded for further proceedings consistent herewith.
NOTES
[1] This could constitute throwing deadly missiles in violation of section 790.19, Florida Statutes, a second degree felony.
[2] The trial court order erred by reading the facts in the light most favorable to the defendants, who were the movants for summary judgment. The facts must be read in the light most favorable to the plaintiffs as the nonmoving parties. Conley v. Morley Realty Corp., 575 So.2d 253, 256 (Fla. 3d DCA 1992).
[3] By Officer Stinson's account, he asked Thorn to go inside and bring Brown out. When Thorn refused, the officer told Thorn he was under arrest for obstructing an investigation. Thorn ran into the house and the officer pursued him.

For the present summary judgment purposes, Thorn's account is taken as true instead of the officer's version.
[4] The plaintiffs also sued the taxi company and the taxi driver. Those claims are not at issue here.